# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 59907-4-II |
| Respondent, | |
| v. | |
| MICHAEL PERRY CARROLL, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Between 2023 and 2024, Michael Carroll was charged with unlawful possession of a firearm and two counts of unlawful possession of a stolen vehicle under three separate cause numbers. He pleaded guilty in each case. At a combined sentencing hearing on all three cases, Carroll argued for a mental health sentencing alternative (MHSA). The State opposed the MHSA, arguing that given Carroll's long criminal history and additional history of violating terms of community custody, a sentence at the low-end of the standard sentencing range was appropriate. After considering arguments from both parties and reviewing Carroll's mental health evaluation and a Department of Corrections presentence interview report, the trial court concluded that a MHSA was not appropriate and imposed a sentence at the low-end of the standard sentencing range.

Carroll appeals, arguing that the trial court erred by failing to meaningfully consider Carroll's request for a MHSA. We disagree and affirm.

FACTS

In June 2023, Carroll was arrested for second degree unlawful possession of a firearm after he was found walking down a public street carrying a rifle with a towel draped over it. Carroll posted bail and returned to the community. While that charge was pending, Carroll committed several additional crimes that resulted in two felony charges of unlawful possession of a stolen vehicle and one misdemeanor charge of malicious mischief. Carroll remained in the community pending resolution of the various charges.

Nine months after his unlawful possession of a firearm charge, Carroll referred himself for mental health treatment and completed an assessment. The assessment diagnosed Carroll with generalized anxiety disorder, major depressive disorder, and posttraumatic stress disorder. During the assessment, Carroll reported former methamphetamine use and that he was currently unhoused.

Carroll then pleaded guilty in four separate cases in a single hearing. In cause number 23-1-03015-1, Carroll pleaded guilty to two counts of unlawful possession of a stolen vehicle; in cause number 23-1-01649-3, Carroll pleaded guilty to second degree unlawful possession of a firearm; and in cause number 23-1-03008-9, Carroll pleaded guilty to unlawful possession of a stolen vehicle. Carroll also pleaded guilty to misdemeanor malicious mischief in a fourth case, which is not at issue in this appeal.

Carroll participated in a presentencing interview with the Department of Corrections regarding his desire for a MHSA. The interviewer observed that Carroll was polite, cordial, and attentive throughout the interview. Carroll reported a high-level of commitment to completing treatment and complying with a MHSA, saying, "I want to get my life back on track. This will

give me a fresh start, a second chance. I want to work on my relationships and keep on the straight and narrow." Clerk's Papers (CP) (Suppl. No. 59897-3-II) at 64.[1]

The Department's report noted that Carroll was associated with a street gang in the past and has been supervised by the Department's gang unit. The report also noted that in 2018, while under Department supervision, he was "very argumentative, resistant to directives, and demanding to speak to supervisors whenever his behavior was addressed." CP (Suppl. No. 59897-3-II) at 68. The Department's report reported that Carroll was found guilty of 43 violations of community custody conditions between 2017 and 2020. And because he absconded, was jailed for new crimes, and was jailed as a consequence for violating community custody conditions, his term of supervision was extended by more than two years. CP (Suppl. No. 59897-3-II) at 69 (reflecting that Carroll's term of supervision ended in August 2020 instead of when it was supposed to in May 2018).

At a sentencing hearing on the three current felony cases, the State recommended a standard range sentence of 51 months confinement.[2] The State noted that Carroll's offender score was 9+ given his lengthy criminal history, which included second degree possession of stolen property, second degree unlawful possession of a firearm, violating community custody, third degree assault, and violating a domestic violence protection order.

---

[1] This case is linked to cause number 59897-3-II and portions of that record were transferred to supplement the record in this appeal. Citations to the supplemental record will be cited as "Suppl. No. 59897-3-II".

[2] 51 months was the low-end of the standard sentencing range for the second degree unlawful possession of a firearm conviction and mid-range for the other convictions.

Carroll argued he should receive a MHSA. In support of his request for the sentencing alternative, Carroll argued that he had been diagnosed with posttraumatic stress disorder and major depressive order, moderate. Carroll argued that those diagnoses led to a repeating cycle of stability followed by periods of instability, but that he was enthusiastic about engaging in his mental health care to remain stable. Carroll emphasized that his posttraumatic stress disorder and being a repeated victim of gun violence led to him wanting to carry a firearm for self-protection. Carroll informed the court that he had started mental health treatment and secured safe public housing.

The trial court pointed out that despite being out of confinement on bail since June 1st of the previous year, Carroll did not obtain a mental health evaluation until March and did not begin mental health treatment until April 4th, just two months before sentencing. The trial court expressed concerns about Carroll's chances of success in a MHSA program:

> The Unlawful Possession of a Firearm in the Second Degree, with a rifle covered with a towel, walking down Pacific Avenue, that's very concerning to me.
>
> In addition, the PSI contains some commentary by the interviewing doctors about behavior that's been defiant, argumentative, a refusal to follow direction, et cetera, et cetera. Those are all things that cannot and will not make anyone successful with the mental health sentencing alternative.

3 Verbatim Rep. of Proc. (VRP) at 53-54. The trial court also expressed doubt that Carroll would be successful in the MHSA program given his past inability to avoid violation of conditions when on Department supervision.

The trial court concluded, "20-year history of criminal behavior with some [] breaks. I will grant you that. But given the report in the PSI, given the charge under the 49-3 case with the rifle, I don't think Mr. Carroll's a candidate for the sentencing alternative." 3 VRP at 58.

The trial court sentenced Carroll to 51 months of confinement, with all convictions running concurrently. As the trial court made its ruling on Carroll's request for an appellate bond, Carroll fled from the courtroom and courthouse to avoid going into custody.

Carroll appeals the trial court's denial of the MHSA.

ANALYSIS

Carroll argues that the trial court erred by denying his request for a MHSA without meaningfully considering his request. We disagree.

Although a standard-range sentence is generally not appealable, a defendant may appeal a standard-range sentence if the trial court failed to comply with procedural requirements of the Sentencing Reform Act of 1981, ch. 9.94A RCW. *State v. Colon*, 34 Wn. App. 2d 353, 357, 567 P.3d 661 (2025); *State v. Glant*, 13 Wn. App. 2d 356, 376, 465 P.3d 382 (2020). A MHSA is one statutorily specified way a trial court may deviate from the standard sentence range. *Colon*, 34 Wn. App. 2d at 357. "Granting an alternative sentence is entirely within the sentencing court's discretion, so long as the court does not abuse its discretion by categorically refusing to consider the request or by denying the request on an impermissible basis." *Id*. If an offender requests a MHSA, the trial court must meaningfully consider the request in accordance with the applicable law. *Id*.

To be eligible for a MHSA, an offender must be convicted of a felony that is not a serious violent offense or sex offense, the defendant must be diagnosed with a serious mental illness recognized by the diagnostic manual in use by mental health professionals at the time of sentencing, the trial court must conclude the defendant and the community would benefit from

5

supervision and treatment, and the defendant must be willing to participate in the sentencing alternative. RCW 9.94A.695(1)(a)-(d).

Here, the record does not support Carroll's contention on appeal that the trial court failed to meaningfully consider his request for a MHSA. Carroll emphasizes the trial court's conclusion, "I don't think Mr. Carroll's a candidate for the sentencing alternative," but taking that statement in the context of the trial court's entire ruling, it is clear that the trial court was not refusing to consider Carroll for the sentencing alternative, but rather, was concluding that he was not a *good* candidate for the alternative under the circumstances. 3 VRP at 58.

Carroll argues that the trial court's failure to expressly reference the statutory legal standards demonstrates that it failed to properly consider the request. It was undisputed that Carroll was convicted of a felony that was not a serious violent offense or sex offense, that he was diagnosed with a serious mental illness recognized by the diagnostic manual in use by mental health professionals at the time of sentencing, and that he was willing to participate in the sentencing alternative. *See* RCW 9.94A.695(1)(a)-(b), (d). Considering the trial court's oral ruling in its entirety, it is evident that the trial court focused its analysis on whether Carroll and the community would benefit from supervision and treatment. *See* RCW 9.94A.695(1)(c).

The trial court acknowledged Carroll's mental health diagnoses, noted that he had had periods of apparent stability and lawfulness followed by periods of instability and criminal conduct, and noted the findings contained in both Carroll's mental health evaluation and the Department's presentence interview report. In weighing the facts before it, the trial court expressed concern about Carroll's lengthy criminal history and his frequent violations of community custody conditions in the past. In determining whether both a defendant and the community would benefit

from supervision and treatment, a defendant's criminal history and history of compliance with conditions of release are valid and central considerations.

Carroll further argues that the trial court based its decision on the untenable ground of misreading the mental health sentencing alternative report. The trial court stated, "the [presentence interview] contains some commentary by the interviewing doctors about behavior that's been defiant, argumentative, a refusal to follow direction, et cetera, et cetera." 3 VRP at 53. The reports of argumentative behavior noted in the presentence interview clearly came from the Department while Carroll was formerly on supervision, not from interviewing doctors. But considering the trial court's ruling as a whole, it is evident that the trial court simply misspoke. Shortly after making the comment Carroll criticizes, the trial court reiterated its doubt that Carroll would be successful in a MHSA program given what it had read in the report. Carroll's defense counsel clarified by asking, "[A]re you addressing the past issues on supervision specifically?" 3 VRP at 56. The trial court responded, "I am," establishing its concern was with Carroll's behavior while previously on community custody supervision. *Id.* Thus, reading the entire sentencing hearing as a whole, we conclude the trial court's ruling was not based on a misunderstanding of the record.

Carroll also contends that the trial court improperly considered the facts surrounding his unlawful possession of a firearm conviction. The trial court stated that Carroll's offense of unlawfully possessing a "rifle covered in a towel, walking down Pacific Avenue," was "very concerning." 3 VRP at 53.[3] The trial court was not categorically refusing to consider a MHSA, but

---

[3] The State notes that because Carroll did not consolidate his three appeals, the facts of his unlawful possession of a firearm conviction are not properly part of the record on appeal in his two unlawful possession of a stolen vehicle cases. Because we otherwise hold that the trial court did not abuse its discretion when it denied Carroll's request for a MHSA after meaningfully considering the facts

rather properly weighing the circumstances of the case to determine whether the community would benefit from Carroll receiving a MHSA. This was not an abuse of discretion.

Finally, Carroll argues that the trial court's ruling raises "the specter of racial bias." Br. of Appellant at 26 (emphasis omitted). The State contends this issue is raised for the first time on appeal so we should decline to address it. But even assuming a sentence based on racial bias would warrant review for the first time on appeal under RAP 2.5(a), Carroll fails to establish the trial court's decision was the result of bias.

"A judge is presumed to perform [their] functions regularly and properly, without bias or prejudice." *State v. Leon*, 133 Wn. App. 810, 813, 138 P.3d 159 (2006). While we acknowledge that implicit bias is real, and it may impair decision-making, nothing in this record supports the conclusion that the trial court here rendered its sentence based on impermissible racial bias. Rather, as discussed, the trial court's decision to deny Carroll's request for a MHSA was grounded on the facts of the case, which included Carroll's long criminal history, his significant history of frequent violations of community custody conditions, and the risk posed to public safety by the specific facts surrounding Carroll's unlawful possession of a firearm.

CONCLUSION

We affirm Carroll's sentence

---

of each case, including Carroll's lengthy criminal history and history of noncompliance with community custody conditions, we do not address this argument.

No. 59907-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
GLASGOW, J.

We concur:

_____
VELJACIC, C.J.

_____
CHE, J.